## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,                    )<br><br>Petitioner,          )<br><br>v.                                                      )<br><br>MICHAEL J. DOYLE; DIVERSIFIED     )<br>BROKERAGE, INC.; AND MICKEY       )<br>DOYLE ENTERPRISES, INC.,              )<br><br>Respondents.        )<br>_____) | Case No. 07-2276-JWL |
| UNITED STATES OF AMERICA,                    )<br><br>Petitioner,          )<br><br>v.                                                      )<br><br>CLIFFTON E. PUMMILL; DIMENSION )<br>GRAPHICS, INC.; DIMENSION VALUE, )<br>L.C.; CM MANAGEMENT HOLDINGS,   )<br>INC.; CEP MANAGEMENT, INC.;          )<br>MULTI-MEDIA INTERNATIONAL, LLC; )<br>PLATINUM MAGAZINE GROUP, INC.;   )<br>AND PLATINUM MEDIA                       )<br>MANAGEMENT, LLC,                           )<br><br>Respondents.        )<br>_____) | Case No. 07-2277-JWL |

## MEMORANDUM AND ORDER

### I. BACKGROUND

This matter arises from a petition to enforce eleven summonses issued by the Internal

Revenue Service ("IRS"/"Petitioner"/"Government") to Mr. Pummill, Mr. Doyle, and their nine related business entities (collectively, "Respondents"),[1] written and served by Agent Chamberlain ("the Agent").  On February 20, 2007, eight summonses were issued to Mr. Pummill directing him and his spouse to appear before the Agent and produce documents on March 9 or 12, 2007.  These summonses were issued both in an individual capacity as to Mr. Pummill and his spouse, and also to Mr. Pummill in his representative capacity as senior officer or managing member of Dimension Graphics, Inc., Dimension Value, LC, CM Management Holdings, Inc., CEP Management, Inc., Multi-Media International, LLC, Platinum Magazine Group, Inc., and Platinum Media Management, LLC.  On February 21, 2007, a summons was served on Mr. Doyle and his spouse, ordering them to appear before the Agent on March 12, 2007.  Last, on April 4, 2007, the Agent issued, via hand delivery to Mr. Doyle, the final two summonses at issue to Diversified Brokerage, Inc. and Mickey Doyle Enterprises, Inc., directing Mr. Doyle, in his representative capacity as President of the two businesses, to appear before the Agent on April 25, 2007.  These summonses were not complied with, but instead response letters from Respondents' attorney stated neither the appearance time on the summonses, nor the rescheduled times granted by the Agent, would be complied with, citing legal reasoning similar to the arguments made before this Court.

---

[1] Mr. Pummill and/or Mr. Doyle are majority shareholders in all the Respondent-entities, except Multi-Media International, LLC.  Platinum Media Management, LLC ("PMM") is the sole shareholder, and Mr. Pummill and Mr. Doyle each own fifty percent of the shares of PMM.  Mr. Levine, counsel for Respondents, is a shareholder of Platinum Magazine Group.

The Government filed petitions for an Order to Show Cause ("OSC"), which this court granted based upon the Agent's declarations and supporting documents, concluding the Government established a prima facie case for judicial enforcement of the summonses. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985) (indicating the Government's burden is a slight one). This Court then consolidated the enforcement actions against Mr. Pummill and Mr. Doyle. In an abundance of caution and upon motion by Respondents, this Court granted a limited two-hour deposition of the Agent in order to expedite a hearing the following week.[2] This Court granted the deposition and a hearing, which lasted for several hours over the course of two days, because Respondents attempted to refute the Government's prima facie case and asserted affirmative defenses of bad faith and nonexistence of summoned documents through affidavits, not just conclusory statements and legal memoranda. *See Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1444. ("[I]t is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice. . . . It is only where material Government allegations are factually refuted by the taxpayer. . .or where proper affirmative defenses, such as those alleging 'bad faith' . . . are factually supported by the taxpayer's affidavits, the taxpayer is entitled to an evidentiary hearing." (quotations and citations omitted)). This Order follows the conclusion

---

[2]Respondents filed a motion to strike portions of the deposition, but this Court finds it moot because the Government did not attempt to rely on or introduce any of those statements in connection with the hearing.

3

of the hearing.

## II.  GENERAL PRINCIPLES AND OVERVIEW

The Internal Revenue Code authorizes the IRS to examine records, issue summonses, and take testimony for certain purposes under 26 U.S.C. § 7602.[3]  These purposes include "ascertaining the correctness of any return," "making a return where none has been made," "determining the liability of any person for any internal revenue tax," "collecting any such liability," or "inquiring into any offense with the administration or enforcement of the

---

[3]§ 7602. Examination of books and witnesses

(a) Authority to summon, etc.--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized--

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense.--The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

internal revenue laws." 26 U.S.C. § 7602(a)-(b). Section 7602 gives the IRS expansive information-gathering authority to encourage effective tax investigations, and consequently, broad authority to issue summonses. *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984); *Codner v. United States*, 17 F.3d 1331, 1332 (10th Cir. 1994) ("IRS has broad authority to issue summonses in support of its efforts to determine taxpayers' tax liabilities."). To enforce the summonses, the IRS must petition the district court as it has done here. 26 U.S.C. § 7604; *United States v. Claes*, 747 F.2d 491, 494 (8th Cir. 1984). The district court proceedings are meant to be summary in nature so as not to unnecessarily interfere with the IRS's investigations. *See United States v. Stuart*, 489 U.S. 353, 369 (1989) (quoting S.Rep. No. 97-494, vol. 1, p. 285 (1982), U.S. Code Cong. & Admin. News 1982, p. 1031); *Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1449. In light of these broad powers, this Court evaluates whether the summonses should be enforced.

"[T]he IRS must use its summons authority in good faith." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 313 (1978). Good faith is measured by the *Powell* requirements: "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *Powell*, 379 U.S. at 57-58. The Government bears the initial burden of proving its prima facie case under the *Powell* factors. *See United States v. City Nat'l Bank & Trust Co.*, 642 F.2d 388, 389 (10th Cir.1981) (indicating the prima facie case can be established by submission of an agent's affidavit). Once the burden is met, taxpayers-Respondents "bear

the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service. . . . Without a doubt, this burden is a heavy one." *LaSalle Nat'l Bank*, 437 U.S. at 316.

In sum, Respondents allege the summonses were issued in bad faith, contrary to the *Powell* requirements. The bases for their claims are that they were issued to harass and retaliate, the scope of the requests was overly burdensome in various ways, the IRS already has requested some of the documents in its possession, Respondents do not possess some of the requested documents, and the Fifth Amendment protects them from having to comply. The Government, on the other hand, asserts the summonses were issued in good faith and seeks enforcement of the summonses with the exception of the records identified in the Agent's "Exhibit B," discussed below. This Court enforces the eleven summonses, with the exception of those documents subsequently identified as either being in the Agent's possession or nonexistent.

### III. FINDINGS OF FACT

Agent Chamberlain opened the original audits of Respondents in 2001. Originally, the audit only pertained to the 1999 fiscal year of Dimension Graphics, Inc. The Agent determined there were related abuses of a management fee scheme in three other entities, Dimension Value, LC, CM Management Holdings, Inc., and Diversified Brokerage, Inc., and opened audits on all four for 1999-2001. The Agent testified she received partial cooperation for the Information Document Requests ("IDRs") issued for these years. These audits included Mr. Doyle's and Mr. Pummill's spouses because the businesses were flow-through

entities, and the couples filed joint returns.

From April to September 2003, the Agent was on detail to a larger case and only completed limited work on Respondents' case file.  A year later, she referred the case to the criminal investigation division, and she was unable to work on the case during this time.  It was sent back to her in April 2005 with no charges filed.  The next month, the Agent opened audits of the businesses previously listed for the years 2002 and 2003.  Some of these were a result of a computer selection process and the determination by another IRS employee that they were audit status.  From September 2005 through March 2006, the Agent was in a grand jury investigation and unable to work on the case.  The month following the Agent's return from the investigation, Respondents terminated their consent to the statute of limitations extension. The Agent then submitted the case for civil fraud penalties, which was rejected on May 10, 2006.  In June 2006, the Agent issued Notices of Deficiency for the previously listed businesses for 1999-2002.  For the four year period, the Pummills adjustments were $6,386,951, with taxes totaling $2,378,082.  The Doyles' totals were $6,523,278.34 in adjustments and $2,268,323 in taxes.  Shortly thereafter, Respondents filed a petition with the tax court, disputing the deficiencies.

Similar management fee deductions that gave rise to deficiencies in the earlier years were also found in subsequent years and for related entities, resulting in an expanded investigation.  The supervisor described during direct examination that Respondents took management fee deductions on entities that were not management companies, that the management fee had been disallowed as an item in previous years' audits, which is why the

2003 and 2004 audits needed to be conducted.[4]  In August 2006, audits of the previously

listed companies for 2004 began, one of which, Dimension Graphics, was referred to the

Agent by another agent to whom it was independently assigned, which is a standard IRS

practice.  In August and September 2006, the 2003 and 2004 audits of Platinum Magazine

Group, Inc., Platinum Media Management, LLC, and the 2003 audit of Multimedia

International, LLC began (and the 2004 audit of Multimedia began in early 2007).  In

September 2006 Respondents sought and were granted an extension on three IDRs the Agent

issued.  The Agent then issued multiple new IDRs to Respondents with the same due date as

those on which they had been granted an extension.[5]  (The new IDRs were due on the same

day as the previous three).  Respondents never requested an extension of time on these new

IDRs.  The Agent then initiated the audits of Mickey Doyle Enterprises, Inc. and CEP

Management, Inc. in October 2006.

Over the next few months, the Agent's work on the case was limited while she

completed a graduate certificate.  In December 2006 Respondents received an answer from

the tax court and the case was referred to the appeals division, with a conference date of

---

[4]Respondents also allege the Agent made threats to open audits of additional years.
The Agent explained she might have said she would open additional years.  This was because
if the audit of the initial year shows the return is incorrect, then it is standard to move to the
next year and make sure that return is correct.

[5] Respondents provided no evidence that the Agent is limited in the number of IDRs
that can be issued to each taxpayer.  Furthermore, they did not contest that the Agent must
send separate IDRs and summonses to each entity or person she is examining.

February 27, 2007.  The Agent was told not to schedule the appearance in the summonses

during the week of the appeals conference, but she delivered the summonses during the week

prior and set the appearances for March.  The Agent testified the summoned materials relate

to specific items on a tax return to aid the Agent in determining the correct tax liability of

Respondents.[6]

In July 2007, the Agent served the OSC first to Mr. Doyle, who asked what the papers

meant.  In her response she made a statement, which Mr. Doyle testified was to the effect of

"they are going to put you guys in jail."  A week later, she served Mr. Pummill, who

recorded the conversation with Agent Chamberlain and played it back at the hearing before

this Court.  On that recording the Agent said she told Mr. Doyle, in reference to going to jail,

that "it could happen."  At the hearing, the Agent denied she said anything about "jail" to Mr.

Doyle and Mr. Pummill, but that she did tell Mr. Doyle someone else told her Respondents

could be arrested.  During the service of the OSC on Mr. Pummill, she also referenced a 2005

audit after Mr. Pummill asked about that year, and did not correct herself as she said she had

during her testimony (as demonstrated by the recording).  There were no audits open for

---

[6] During May 2007, the Agent issued three new IDRs on partners of Platinum
Magazine Group, Inc., including their spouses.  It is a flow-through entity affecting the
individuals' taxes and the partners filed joint returns.  In the letter, the Agent indicated
"adjustments" had been made.  Yet, no adjustments had been formally completed as of
the date the letter was sent.  The Agent testified that while the adjustments were not formally
completed when the letter was sent, she was working on them and her supervisor stated that
"adjustments" does not necessarily mean completed adjustments.  Because those IDRs are
not at issue in this case and this Court concludes this does not, even in conjunction with the
other evidence, warrant a conclusion of retaliation, no further comments on the use of such
language are necessary.

2005 when the statements were made.

Currently, the Agent possesses some summoned documents, which were identified with the enforcement petition.  The Agent testified the identified documents were received from the bank in March after issuing the contested summonses.  During the hearing, a fax sent by the Agent and dated April 10, 2007, was admitted into evidence and showed the Agent also has a few other summoned documents in her possession.  Of those on the faxed list, it appears the 2003 and 2004 financial statements of Dimension Graphics and the 2004 corporate financial statement of Diversified Brokerage are the only materials in her possession that were also summoned.

## IV.  CONCLUSIONS OF LAW

### A.  *Powell* Factors

#### *1.  Legitimate Purpose*

The first factor under *Powell*, as previously listed, is that the summons must be issued for a legitimate purpose.  Respondents allege these summonses were issued for illegitimate purposes, to "harass the taxpayer[s]" and to retaliate against them because criminal fraud charges and civil fraud penalties had been denied, and because the taxpayers withdrew the statue of limitations extension, filed tax court petitions, received a time extension to comply with IDRs, and appealed deficiency adjustments.[7]  Contrastingly, the Government asserts that

---

[7] While Respondents initially alleged the summonses were issued to pressure them in a collateral matter, the appeals division settlement, there was insufficient evidence presented to prove the IRS was attempting to force a certain settlement favorable to the IRS or pressure Respondents into a certain outcome by issuing these summonses.  There was evidence to

these summonses were issued for legitimate purposes consistent with § 7602.  While

Respondents may have been subject to extensive burdens and an agent whose

professionalism, competence, and efficiency likely have been suspect at times, this does not

persuade the Court that Respondents have satisfied the heavy burden that the summonses

were issued without a legitimate purpose.[8]

      Respondents offered evidence regarding timing to substantiate that the purpose in

issuing the summonses and conducting the related audits was for harassing and retaliatory

purposes.  This evidence included gaps of time in progress of the investigation, issuing

multiple IDRs and summonses shortly after Respondents' various legal actions, and demands

that allowed short time spans to produce records.  Admittedly some of the timing set forth

above is peculiar.  Petitioner, however, also put forth evidence explaining timing and

progression of the case, as well as offering that some of the timing was coincidental.

Respondents essentially disagree with how the investigation has been conducted by

disagreeing with the timing of the various issuances and audit openings.  Yet, disagreeing

with the manner and timing of the investigation does not mean summonses were issued in

bad faith.  *See, e.g.*, *Columbus Surgical Svcs., Inc. v. United States*, 885 F. Supp. 1050, 1055

---

support a possible inference of an attempt to disrupt the appeals process, but the Court
concludes that was not in fact the motive for these summonses.

    [8] There is also sufficient evidence showing Respondents were only partially
cooperating and the audits often did not progress quickly as a result of their own delays.
That the Agent never issued a summons before those at issue is not persuasive to this Court
that Respondents were always fully cooperative.

(S.D. Ohio 1994) ("A taxpayers' disagreement with the manner in which an investigation is being conducted is not, without more, evidence of bad faith.").

Respondents also put forth evidence that the time they were required to spend on these audits was overly burdensome, and therefore, evidence of a purpose to harass. "[I]nconvenience is not harassment and does not make out a requisite defense that the summons was issued in bad faith." *United States v. McGuirt*, 588 F.2d 419, 421 (4th Cir. 1978). Respondents emphasized the audits have been ongoing for six years, but that does not mean the investigation has been in bad faith. "[T]he fact of having been audited for six and a half years is not, by itself, sufficient to raise an inference of bad faith." *United States. v. Kerrigan*, 114 F.3d 1170, 1997 WL 222249, at *1 (1st Cir. Apr. 28, 1997). Numerous reasons for the length of the process were provided at the hearing and the Court is persuaded that there is nothing amiss about its duration. One of the Respondents also testified that the eleven summonses would require them to produce hundreds of thousands of documents, which is also irrelevant to the IRS's good faith.[9] "The fact that the records called for were extensive is not material." *United States v. Luther*, 481 F.2d 429, 433 (9th Cir. 1973). The number of documents is simply a product of the complexity of the process. Therefore, to the

---

[9] One of Respondents' complaints is that they were served *eleven* summonses while they were trying to prepare for a meeting with the appeals division. As testified to at the hearing, a different summons must be issued for each entity, i.e., one summons for each of the Respondents. This was not contested by Respondents. Mr. Pummill and Mr. Doyle chose to create and structure their businesses as these separate entities. Therefore, it is naturally going to require more paperwork, and they also will receive more requests from the IRS in compliance with IRS procedure.

extent that it was burdensome to Respondents, it does not warrant a conclusion that the summonses were issued solely to harass.

The Respondents also, in attempting to show harassment, put forth evidence of the Agent's statements about Respondents going to jail and the possibility of opening other audits.[10] These, too, are insufficient to show bad faith through improper purpose.  "The real issue presented is not whether the taxpayer perceived the Agent's actions as threats, but whether there is a legitimate purpose for the investigation." *United States v. Tex. Inst.*, 755 F.2d 469, 479 (5th Cir.1985), *overruled on other grounds by United States v. Barrett,* 837 F.2d 1341 (5th Cir. 1988).  The Court does not condone the manner in which the Agent apparently communicated with Mr. Doyle, in particular.  But unprofessionalism, or even inappropriate expressions of hostility, perhaps born of frustration, do not equate to harassment and retaliation.  In fact, the Court was thoroughly convinced that the Agent, and her supervisor, who also testified at the hearing, harbor a sincere good faith belief in the necessity to obtain these documents.

Even if the Court drew some inference of harassment and retaliation, Respondents have not refuted that these summonses were issued in connection with an investigation to

---

[10]At an initial hearing on the Motion for Limited Discovery, etc. counsel for the IRS stipulated to the fact that Agent Chamberlain was acting within the institutional posture of the IRS.  Some evidence does seem to show that the actions are personal to the Agent. There are cases explaining that the focus of whether there is a legitimate purpose should be on the "institutional posture" as opposed to the individual (hostile) motivations of the Agent.  Per the stipulation, this Court evaluates the evidence presented of the Agent's acts as those of the institutional posture of IRS.  Under either theory, however, Respondents' harassment and retaliation claims fail.

determine tax liability, which on its face is a legitimate purpose under § 7602.  *See United States v. Turner*, 480 F.2d 272, 275 (7th  Cir. 1973) ("[E]ven though the summons might . . . have harassing aspects, it may issue if it is also directed at ascertaining civil tax liabilities."). Deficiency determinations, although still being reviewed in the appeals division, were made during the earlier years' audits as a result of "an abuse of management fee scheme."  There were similar management deduction fees in returns of different years and related entities. This shows a reasonable and legitimate purpose for the Agent to expand her investigation into those related entities and years. Petitioner, through testimony, explained that expanding an investigation when there are similar issues in other related returns is a normal practice of the IRS. Respondents did not refute this or that there were similar management deduction fees taken on the returns that became the subject of the further investigation and these summonses.  Also, several audits were transferred to the Agent from other agents after they were already opened. Therefore, despite the evidence from which Respondents would like this Court to infer audits were opened or summonses were issued to harass or retaliate, Respondents have not proven a legitimate purpose does not exist.  Declining to enforce the summonses is not an appropriate remedy on these facts.

   *2. Relevance*

   Under this factor, this Court evaluates whether the documents and testimony summoned may be relevant to the investigation.[11]   Courts have explained "may" means the

---

   [11] As previously discussed in relation to a legitimate purpose, the number of documents or burden on Respondents is immaterial to good faith, including whether they

14

threshold is low.  *United States v. Arthur Young and Co.*, 465 U.S. 805, 814 (1984) ("The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. . . [T]he Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.").  The IRS must show "that inspection of the desired records might throw light upon the correctness of the taxpayer's return and liabilities." *United States v. Kis*, 658 F.2d 526, 537 (7th Cir. 1981) (internal quotations omitted).  The "Commissioner is entitled to subpoena such items if there is some realistic expectation that they may illuminate the accuracy or inaccuracy of the taxpayer's return."  *City Nat'l Bank & Trust Co.*, 642 F.2d at 390.

Respondents did not meet their heavy burden to show the summoned items would not be relevant to the accuracy of their returns.  The Agent testified and included in her declarations that all the summoned materials are necessary for her to make the tax liability determinations.  Furthermore, these entities have either Mr. Doyle, Mr. Pummill, or both as majority shareholders, managing members, and/or owners, and the flow-through status of the businesses makes the individuals' returns relevant to the business audits.  *See generally, e.g.*, *Arnold v. United States*, 635 F. Supp. 88, 90 (M.D. Fla. 1986) (discussing relevance of related entities' information and records, holding the IRS may summon records of corporations connected with the Arnolds as relevant to the investigation of the Arnolds in

―――――――――――――――

were relevant.

their individual capacities).  The spouses are included in the summonses because

Respondents filed joint returns, so their information is relevant.  Respondents also allege that

the Agent is requesting information from years not being audited, presumably alleging that

this information is not relevant.  The Agent, on the other hand, testified that the agents

always ask for prior and subsequent years' information to make determinations in relation to

the year being audited.  This Court agrees that other years' information may be relevant to

the tax liabilities of Respondents.  Respondents have a heavy burden and provided little

evidence beyond conclusory statements regarding how any of the specific records summoned

are irrelevant, other than the general arguments discussed.  Therefore, this Court agrees with

the IRS's declarations that these documents "may" be relevant to Respondents' tax liabilities.

### 3. Possession

The third factor of *Powell* is "the information sought is not already within the

Commissioner's possession."  *Powell*, 379 U.S. at 57-58.  The Government seeks to enforce

the summonses with the exception documents now in the IRS's possession, listed in "Exhibit

B"[12] to the Agent's declaration submitted with the Government's petition for enforcement.

---

[12] The Documents listed in "Exhibit B,"  materials that are in the possession of the
Internal Revenue Service, are as follows:
(1) Bank statements and bank materials received from Enterprise Bank & Trust for
Dimension Value, L.C.; CM Management Holdings, Inc.; Dimension Graphics, Inc.;
Platinum Media Management, LLC; and Multi-Media International, LLC  (account numbers
redacted for privacy reasons)
(2) Balance sheet and income statement for Dimension Graphics, Inc., for periods
ending October 31,2003 & October 31,2004, received from Enterprise Bank &
Trust
(3) Aging Report-Summary, Receivables Management, for Dimension Graphics, Inc.,

Additionally, Respondents claimed there were other documents in the summonses already in the IRS's possession.  With a few exceptions that can be gleaned from a comparison of the summonses with a fax sent by the Agent and admitted into evidence, Respondents failed to prove what information was already in the IRS's possession.   Therefore, they have not carried their heavy burden to prove the summonses were not issued in good faith.

Respondents argued in their Responses to the OSC that this Court cannot enforce the summonses where even just some of the documents are in the IRS's possession because it shows bad faith.  First, the Agent testified she received documents listed in "Exhibit B" in March from a bank *after* the summonses were issued in February.   Respondents did not refute this, nor provide any specific evidence that the Agent had any of the documents listed in "Exhibit B" at the time the summonses were issued.  Because the validity of the summonses is determined at the time they are issued, not at the time of the enforcement hearing, there is no proof the summonses were invalid.  *See United States v. Gimbel*, 782 F.2d 89 (7th Cir. 1986).  Also, this Court may partially enforce summonses.  The Government seeks to enforce the summonses with the exception of the "Exhibit B"

---

for period ending October 31, 2003 & October 31, 2004, received from Enterprise Bank & Trust
(4) Consolidated income statement of Dimension Graphics, Inc., for periods ending September 30, 2004 and October 31, 2004, received from Enterprise Bank & Trust
(4) Balance sheet for CM Management Holdings, Inc., for period ending September 30, 2004, received from Enterprise Bank & Trust
(5) Loan documents for Dimension Graphics, Inc., dated September 24, 2004 for loan #xxx and June 5, 2005 for loan #xxx, received from Enterprise Bank & Trust (numbers redacted for privacy reasons)

documents.  While this Court cannot issue a conditional enforcement by placing restrictions on the IRS's use of summoned material, it can order partial enforcement of the summonses for documents not already possessed by the IRS.  *See, e.g.*, *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 737 (6th Cir. 2006) ("Monumental's request for a protective order covering the documents sought by the IRS would constitute conditional enforcement of the summons because restrictions would be imposed on the IRS's use of summoned materials. Partial enforcement, in contrast, narrows the scope of the summons by limiting the type and amount of documents that the summoned party must produce. . . this court has permitted a summons to be limited in scope."); *see also Kerrigan*, 114 F.3d 1170, 1997 WL 222249, at *1 ("Nor do we think the fact that the revenue agent admitted to having bank records shows bad faith. . . Rather, at most, it is a reason to restrict the scope of the enforcement order."). Therefore, simply because the Agent admitted she possessed some summoned records does not mean the summonses were issued in bad faith, nor that this Court cannot enforce them.

The Court now turns to which summoned documents are in the IRS's possession other than those listed in the Agent's "Exhibit B."   This is viewed within the context that Respondents have the burden to prove that a document is in the IRS's possession, and the IRS may rely on the sworn statements of the Agent that the documents are not in its possession.  *See, e.g.*, *Conner v. United States*, 2004 WL 2980744, *3 (W.D. Va. 2004) ("Because the IRS had already produced an affidavit from [the Agent] disavowing possession of the documents, the burden to prove possession rested with [the taxpayer] at the evidentiary hearing.").  First, Respondents argue that some of the summoned documents were sent in

December 2005 to the Agent.  In Mr. Pummill's Affidavit, he points out that in the

summonses to Dimension Graphics, Inc., Dimension Value, CM Management, and

Diversified Brokerage, the Agent requested a "trial balance for the period of November 1,

2003 through October 31, 2004."  Pummill Affidavit, ¶ 46.  Respondents assert they

submitted a "general ledger for year end 10/31/03" in the December 2005 package that shows

"closing values for each account in that general ledger were equivalent of the trial balances

that she now seeks again," also providing the cover letter to the December 2005 package that

indicates the ledger was included on a computer disk.  Pummill Affidavit, ¶ 46.  The

taxpayer, however, provided no proof to this Court that the general ledger provides the same

information as the "trial balances" the Agent now requests.  Similarly, Respondents argue

"Dimension Graphics management fee expenses payable to affiliates was included in the

general ledger provided to Agent Chamberlain on December 5, 2005."  Pummill Affidavit, ¶

46.  While there is substantiation in the cover letter to the December 2005 package that the

general ledger was included, there was no proof presented that the management fee expenses

are in that general ledger.

Mr. Pummill also indicated that "in response to one of Agent Chamberlain's prior

document demands dated September 30, 2005, we provided accounts payable and accounts

receivable information (including any loans that fell within those categories.)"  Pummill

Affidavit, ¶ 46.[13]  Outside this conclusory statement, no further proof was provided that

---

[13] It appears Respondents argue that information requested has already been given to
the Agent in a different form in connection with previous years' audits.  This Court reiterates

shows the IRS possessed these records when the summonses were issued or that they are currently in the IRS's possession, such that this Court should limit the scope of the enforcement.  Because the taxpayers have the heavy burden and it has not been conclusively proven to this Court that the information discussed herein is already in the IRS's possession, they must comply with the summonses.

In contrast, there are a few records in the IRS's possession that this Court does *not* include in the enforcement of the summonses.  First, the documents in "Exhibit B," listed in footnote twelve, do not have to be turned over by Respondents.  Respondents also showed that two other sets of documents in the summonses are in the Agent's possession.  In a fax dated April 10, 2007, the Agent acknowledged having the 2003 and 2004 corporate financial statements for Dimension Graphics, Inc., and Diversified Brokerage, Inc., among others.  The 2003 and 2004 Dimension Graphics statements and 2004 Diversified Brokerage statement appear to be the only documents that are also in the summonses at issue.  Therefore, because

---

the previously noted general principle that "Section 7602 gives IRS expansive information-gathering authority to encourage effective tax investigations." While not dispositive because Respondents did not provide sufficient proof, this Court notes where an agent requests information in a different form, particularly when both are kept in the normal course of business, it is not necessarily evidence of bad faith.  Moreover, as the IRS has expansive authority to make tax liability determinations and the taxpayer is liable under such determinations, it is likely in the best interest of the taxpayer to provide information in a manner that is most understandable for the agent.  Of course, this notion has limits when it results from bad faith, but here there is nothing to indicate the Agent or the IRS knew, as Respondents allege, that the information sought might be buried within past materials, nor that the format of those previous materials will provide a means to "effective tax investigations."

those are in the Agent's possession, the enforcement of these summonses is limited in scope

to not include those financial statements.

Last, Respondents insist this Court should conclude, based upon these few specific

examples, that the Agent "was in possession of a great deal of the materials she purportedly

sought in the summonses…[and i]t should not be up to the taxpayers to siphon through

eleven different summonses (requiring production of tens of thousands of documents) to

determine which parts, if any, of which summonses, if any, are proper, and which are not. . .

".  Pummill Affidavit, ¶ 47.  This general catchall argument is without merit.  *See, e.g.*,

*Xelan, Inc. v. United States*, 361 F. Supp. 2d 459, 465 (D.Md. 2005) ("Xelan cannot make

this showing [that documents are in IRS's possession], arguing only that because thousands

of pages of documents have already been produced. . . the IRS should be required. . . to state

what documents it already has in its possession.").  First, the IRS went beyond its burden,

because validity is determined at the time of issuance, by listing those documents it obtained

after issuing the summonses.  Next, encumbrance on the taxpayers is not evidence of bad

faith, as previously discussed.  Last, the burden is on the taxpayer to prove the IRS is in

possession of information summoned, which is not met by Respondents' catchall arguments.

*See, e.g.*, *United States v. Arizechi*, 2006 WL 1722591, *5 (D. N.J. June 20, 2006)

(concluding the taxpayer did not meet his burden when he did "not come forth with any proof

that the Government, in fact, possesses the documents sought. Instead, he only comes forth

with mere probabilities-namely, that the Government *might* have already obtained the records

from the financial institutions").   For example, Respondents vaguely allege the Agent

already had the opportunity to examine records in their offices. This, however, is not

necessarily considered possession, and Respondents gave no specifics as to which documents

had already been viewed. [14]  Also, Respondents claim there are records in her possession the

Agent is concealing through the wording of the Agent's "Exhibit B," on which the first item

is imprecisely described as "bank materials."  Respondents claim this Court cannot determine

whether the documents are already in the IRS's possession when the Agent made such an

ambiguous declaration.  However, this ignores the fact that Respondents have the burden to

prove the documents are not in the IRS's possession.  Also, the Agent explained during the

---

[14] The Tenth Circuit's standard for what constitutes possession may be more lenient in favor of the taxpayer than other Circuits.  However, because Respondents did not show which summoned documents were already viewed by the Agent, with the exceptions of those identified and discussed, this Court need not address the argument of whether the opportunity to view documents constitutes possession.  *See Balanced Fin. Mgmt., Inc.*, 769 F.2d at 1446-47 (addressing the standard of § 7605(b), which also is used by courts in the analysis of the third *Powell* factor and noting, "the purpose of § 7605(b) is to prevent unnecessary visits and inquisitions [by tax examiners] after a thorough examination is supposed to have been had. [T]he standard is whether the examination or investigation sought by the IRS is unnecessarily duplicative of some prior examination.") (internal quotations and citations omitted) (alterations in original);  *cf., e.g.*, *United States v. McGuirt*, 588 F.2d 419, 421-22 (4th Cir. 1978) (concluding the IRS did not have possession where agent spent approximately twenty-five hours at taxpayer's offices, all taxpayer's record were generally made available to him for viewing and copying, but agent only copied and had possession of one, and then listed in the summonses those documents made available to him but that he failed to copy); *cf. United States v. Pritchard*, 438 F.2d 969 (5th Cir. 1971) (holding the information was already in the IRS's possession where the government made no argument the documents were not already in its possession and the agent previously met and reviewed the records with the attorney from whom the agent was summoning the documents); *United States v. Garrett*, 571 F.2d 1323, 1328 (5th Cir. 1978) (explaining Garrett's case was different because "[i]n *Pritchard*, the IRS never made reference to whether the Commissioner already possessed the information sought in the summons. Therefore, we agreed with the district court that the government had not shown the requisites for enforcement").

hearing that she did not list these out because they were not relevant to or the types of documents she was seeking.  With the exception of the proof provided for the few documents previously discussed, Respondents have not, in these catchall arguments, given any specifics as to which of the documents the IRS possesses that are also requested in the summonses. Therefore, this Court does not deny or limit the scope of the enforcement based upon these arguments because the Respondents have not met their heavy burden. [15]  Other than the financial statements and other records listed in "Exhibit B," Respondents must comply with all other requests in the eleven summonses, with the exception of the depreciation list and schedule and nonexistent contracts subsequently discussed.

*4. Administrative Procedures*

---

[15] Respondents also make an argument about other documents which have been requested, such as W-2 forms that could be obtained from an index system directly through the IRS, as being already possessed by Petitioner.  The evidence presented mainly pertained to IDRs not at issue in this case and Respondents did not specifically show any such documents requested in the summonses at issue. Thus, Respondents have not provided sufficient proof for this Court to draw that conclusion.  Regardless, it has been held that information possessed by the IRS for another purpose or in another department, or that the IRS may otherwise have access to, does not necessarily mean the Government fails the third *Powell* factor.  *See, e.g.*, *United States v. Luther*, 481 F.2d 429, 432 (9th Cir. 1973) ("The fact that the Service may have had access to (a) statements filed by the Corporation with the State of Arizona, (b) records of banks as to checks issued by the Corporation, or (c) possession of Forms W-2 issued by the Corporation, showing withholding, does not destroy the Government's right to inspect the original and primary records of the Corporation."); *Pflum v. United States*, 2000 WL 1466194, at *4 (D. Kan. July 6, 2000) ("The government is not deemed to already possess documents for purposes of a tax fraud audit when those same documents were initially inspected by the IRS in a routine audit.") (citing *United States v. Silvestain*, 668 F.2d 1161, 1163 (10th Cir 1982)); *United States v. Spezzano*, 559 F. Supp. 631 (W.D. N.Y. 1982) (IRS already possessed tax returns filed by taxpayer did not necessarily mean it was prohibited from obtaining the accountant's drafts of those returns to ascertain accuracy of taxpayer's return).

Respondents provided no arguments alleging the IRS's administrative procedures were not followed in issuing the summonses.

### B.  Affirmative Defense of Non-possession/Nonexistence of Records

Respondents allege the summonses are "unenforceable in that they demand production of records that do not exist, or are not currently in the possession or control of Respondents." Answer to Petition to Enforce Internal Revenue Summons, ¶ 23.  Respondents focus this nonexistent documents argument on the summonses to Multi-Media International, LLC and Mickey Doyle Enterprises.  In the former, the Agent requested a "[d]etailed depreciation schedule maintained for Federal Income Tax purposes. . .," and in the latter, she requested a "[d]etailed depreciation list maintained for Federal Income Tax purposes. . . ".  Respondents assert these documents do not exist, and the Agent knows that because they created similar documents during a previous audit at the Agent's request.

"A lack of possession and control of summoned documents is a 'valid defense' to an IRS application for an enforcement order."  *United States v. Huckaby*, 776 F.2d 564, 567 (5th Cir. 1985) (citing *United States v. Barth*, 745 F.2d 184, 187 (2d Cir.1984) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1985))).[16]  "However, as with any defense in an IRS

_____

[16]A short discussion about the internal procedural requirements is supportive of the conclusion that summoning nonexistent documents should not be enforced, even though strict adherence to guidelines, as opposed to the Code, is not required under *Powell*.  *See, e.g.*, *United States v. Price Waterhouse and Co.*, 515 F. Supp. 996, (D.C. Ill. 1981) ("Violations of informal guidelines do not rise to violations of "the Code.").   The current Internal Revenue Manual provides, "A summons can be used to require a witness to appear on a given date to give testimony, or to produce existing books, papers and records, or other data. A summons cannot require the preparation or creation of documents (including tax

summons enforcement proceeding, the party resisting enforcement bears the burden of

producing credible evidence that he does not possess or control the documents sought."

*Huckaby*, 776 F.2d at 567.  In Mr. Pummill's Affidavit, he asserted within the context of the

Fifth Amendment argument that the depreciation list and schedule do not exist.  Because it

was a sworn statement by Respondents, this Court finds it is credible evidence that

Respondents do not possess the documents.  *See United States v. Lawn Builders of New*

*England, Inc.*, 856 F.2d 388, (1st Cir. 1988)  ("[W]hen an agent of a corporation fails to

produce documents that are the subject of a valid summons, he must give sworn testimony

that he does not possess them."). The Government did not refute these statements outside the

possible inference that could be drawn from the Agent alluding that she never requested that

Respondents create documents.  Therefore, Respondents have carried their burden, so the

depreciation schedule and list do not have to be produced.[17]

---

returns) that do not already exist." Internal Revenue Manual, 4.32.2.7.5(1) Summonses
(03-30-2006); *see also United States v. Euge*, 444 U.S. 707, 718, n.11 (1980) ("We express
no opinion on the scope of the Service's authority to otherwise order the witness to generate
previously nonexistent documentation under § 7602.  The Service in fact has expressly
disclaimed any intention to order the creation of documents.  The Internal Revenue Manual §
4022.64(4) (CCH 1977) provides that an administrative summons 'should not require the
witness to do anything other than to appear on a given date to give testimony and to bring
with him/her existing books, papers, and records.  A witness cannot be required to prepare or
create documents.'").

[17]In one of the Government's responses, it stated there was no obligation for the
taxpayers to have to create documents, that was not the intent in summoning those
documents, and Respondents just had to assert and provide credible evidence of the
nonexistence to the IRS.  The Agent's supervisor also testified the IRS does not require the
creation of documents, but that is okay to make such a request if it is more convenient for the
taxpayers.  The Court agrees that Respondents could have gone before the IRS to assert the

Similarly, Respondents argue summoned contracts involving "Multi-Media Management, LLC" do not exist because that business does not exist.  The Agent summoned contracts between Dimension Graphics, Inc. and "Multi-Media Management, LLC," as well as Dimension Value, LC and "Multi-Media Management, LLC."  The Agent indicated during her cross examination testimony that she was unaware of the mistake, and it likely was a result of a "typo."  Because the Government did not refute the nonexistence of this business, the scope of the summonses enforcement is limited to this extent, as well.  Respondents do not have to produce contracts between Dimension Graphics, Inc./Dimension Value, L.C. and "Multi-Media Management, LLC."

### C. Fifth Amendment Claim

This Court denies Respondents' assertions that enforcement should be denied based on the Fifth Amendment.  Respondents must comply with the summonses and assert the privilege as to specific documents summoned or testimony sought at the time it is inquired into at the appearance requested by the IRS.

> Appellants generalized fear of criminal prosecution for a violation of the tax laws is an insufficient basis for asserting a blanket claim of the Fifth Amendment privilege in refusing to produce any of the documents requested by the summonses. In order to validly raise the Fifth Amendment privilege, appellants must comply with the instructions of the summonses.  At the appropriate time, appellants may interpose their claim

_____

nonexistence of the documents.  Because the Court finds there was credible evidence presented, it does not require Respondents to reiterate this before the IRS.  It may be, however, to Respondents' benefit to create and produce these documents to prevent misunderstandings by the Agent and future time and expense; no obligation to do so, however, is imposed.

of Fifth Amendment privilege pertaining to specific documents and in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability. At that time, the appropriate parties could then seek judicial determination on each claim of privilege with respect to the specific documents summoned and questions asked by the IRS.

*United States v. Schmidt*, 816 F.2d 1477, 1481-82 (10th Cir. 1987)).   Thus, while

Respondents' fear is not necessarily generalized or speculative as admitted by Petitioner, this

Court does not at this time make a determination of whether the privilege applies because

Respondents have not complied with the instructions of the summonses.

## V.  ORDER

**IT IS THEREFORE ORDERED BY THE COURT** as follows:

(1) That the United States' Petitions to Enforce IRS Summonses filed June 27, 2007, is

GRANTED, with the exceptions noted below in (2); and

(2) The Respondents are ORDERED to comply with the IRS summonses at issue here on or

before September 17, 2007, or any later date on which the IRS agrees to accept the

Respondents' compliance with the subpoenas, with the exceptions of the following

documents the taxpayer-Respondents do not need to produce: (a) documents in footnote 12

listed in the Agent's "Exhibit B;" (b) 2003 and 2004 Dimension Graphics, Inc. financial

statements and 2004 Diversified Brokerage, Inc. financial statement, as discussed in Part

IV.A.3; (c) the nonexistent records discussed in Part IV.B of this Order, which includes the

"depreciation list," "depreciation schedule," and contracts involving "Multi-Media

Management, LLC."

**IT IS SO ORDERED.**

Dated this 7th day of September, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge